IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Shawn Michael Robinson, ) | C/A No.: 3:13-73-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| Dwight Green; Robert Vick; Leonard ) | REPORT AND RECOMMENDATION |
| Ramsey; Cpl. Jarvis Borum; ) | |
| Investigator James M. Koons; Eric ) | |
| Rottenberry; and Benjamin Williams, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Plaintiff Shawn Michael Robinson, proceeding pro se and in forma pauperis, is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health ("SCDMH") pursuant to S.C. Code Ann. § 44-48-10 through § 44-48-170. He brings this civil action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights by the following current and former SCDMH employees: Dwight Green, Robert Vick, Leonard Ramsey, Jarvis Borum, Eric Rottenberry, Benjamin Williams ("SCDMH Defendants") and Investigator James Koons[1] ("Koons") (collectively "Defendants").

This matter comes before the court on Defendants' motion for summary judgment [Entry #69]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if

---

[1] Although Investigator Koons was employed by SCDMH at the time of the incident, he is distinct from the "SCDMH Defendants" because he was only involved in the incident discussed in the complaint during the investigation.

he failed to respond adequately to Defendant's motion. [Entry #70]. The motion having been fully briefed [Entry #85, #92, #93, #102], it is ripe for disposition.

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d) (D.S.C.), this matter has been assigned to the undersigned for all pretrial proceedings. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends the district judge grant in part, and deny in part, Defendants' motion for summary judgment.

I.      Factual Background

Plaintiff submitted a verified complaint, which is viewed as an affidavit in this district and may, standing alone, defeat summary judgment if it contains allegations that are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). The undersigned views the facts in the light most favorable to Plaintiff as the non-moving party. However, because Defendants submitted additional facts that are not necessarily inconsistent with Plaintiff's version of the facts, the undersigned provides both versions of the facts.

A.     Plaintiff's Factual Allegations

On March 24, 2011, while distributing mail, Vick refused to give Plaintiff a Pagan religious magazine. [Entry #1 at 5]. Vick consulted with Officer Rosalind Dendy,[2] who confirmed that Plaintiff could not possess the magazine. *Id*. Plaintiff argued with Dendy about withholding his magazine, and she informed him that it was withheld because it

---

[2] The court dismissed Plaintiff's claims against Dendy without prejudice on January 30, 2014, for failure to effect service of process. [Entry #89].

2

contained a weapons order form. *Id*. at 6. Plaintiff called Dendy a liar and then returned to his assigned cell. *Id*. Plaintiff contends that a few minutes later, SCDMH Defendants came to his cell and Dendy informed him that he was being placed on Security Management Status ("SMS") lock down. *Id.* SCDMH Defendants attempted to lock the window flap on Plaintiff's cell door, but Plaintiff blocked them from locking it. *Id*. According to Plaintiff's complaint, SCDMH Defendants entered Plaintiff's cell, slammed him to the floor, and then choked, kicked, and punched him. *Id.* Plaintiff alleges that while Borum handcuffed him, another defendant kicked him. *Id*. SCDMH Defendants then left Plaintiff's cell. *Id*. Plaintiff somehow released one hand from the handcuffs, grabbed Green's ID badge through the window flap and threw it back out of the window flap. *Id*. Plaintiff also grabbed his desk and threw it at the door. [Entry #93-2 at 9]. Plaintiff alleges that SCDMH Defendants then re-entered the cell and "beat Plaintiff for a lon[g] period of time." [Entry #1 at 6].

SCDMH Defendants then restrained Plaintiff in four point, belly, leg, and hand restraints. *Id.* at 7.  Plaintiff alleges that SCDMH Defendants gave him a shot, and he pulled himself under the bed. [Entry #93-2 at 10]. Plaintiff alleges SCDMH Defendants then placed him in a white sheet and dragged him down the stairs, causing him to pass out from his head striking each of the 19 concrete steps. [Entry #1 at 7]. According to the complaint, SCDMH Defendants took Plaintiff to a lock down cell where they beat him again, stripped him nude, and forced him to sleep on a concrete slab. *Id.* Plaintiff admits in his response to summary judgment that he was given a paper gown and a suicide blanket, but he used them to flood the toilet. [Entry #93-2 at 11]. Plaintiff alleges he was

3

held in the lock down cell for 29 days without access to mail or an attorney. [Entry #1 at 7]. Plaintiff alleges he was transferred to a new cell and held in isolation for an additional 47 days. *Id*.

      B.     Defendants' Version of the Facts

Defendants attest that on March 24, 2011, Plaintiff was in the hallway yelling about his magazine being confiscated. SCDMH Defendants attempted to secure Plaintiff in his cell, but he began swinging his fists outside of his cell flap trying to hit the officers and threatening to kill Dendy. [Entry #69-5, #69-6, #69-7, #69-8, #69-9]. Plaintiff grabbed Green's ID badge, and SCDMH Defendants entered the cell to retrieve the badge. [Entry #69-7, #69-8]. When they opened the cell door, Plaintiff refused to follow commands and came out swinging at them. *Id.* SCDMH Defendants entered the cell and physically restrained Plaintiff, placed him in handcuffs, secured the cell, and exited. *Id.* Plaintiff continued screaming, broke free of one of the handcuffs, and began beating the walls while threatening to kill SCDMH Defendants. *Id*. Plaintiff also ripped out a table that was bolted to the floor. *Id.* SCDMH Defendants again entered Plaintiff's cell to remove his handcuffs, as they could be used as a weapon. *Id*. Plaintiff refused their verbal commands, actively resisting them. *Id.* SCDMH Defendants called nursing staff to administer an injection to calm Plaintiff. *Id*. Once SCDMH Defendants subdued Plaintiff, they removed his handcuffs and placed him into waist and leg restraints. *Id.* They tried to move Plaintiff to a seclusion cell downstairs, but upon informing him that he would be moved, he wedged himself between the floor and the metal bed in his cell. *Id.* Defendants allege that Plaintiff would not come out from under the bed, but SCDMH Defendants

4

removed him with minimal injury. *Id.* According to Defendants, they then physically carried him down the stairs to a locked down cell, but Plaintiff was not injured during the course of the transport. *Id.*

On April 4, 2011, Plaintiff was arrested and charged with three counts of assault and battery, one count of malicious intent to injure personal property, and one count of threat to life. [Entry #69-4 at 13]. A jury acquitted Plaintiff on all charges on March 7, 2012. [Entry #1 at 8]. Plaintiff seeks monetary and declaratory relief. *Id.* at 9.

II.     Discussion

    A.     Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving

5

party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

        1.    Excessive Force

Plaintiff alleges that SCDMH Defendants kicked, punched, and choked him before dragging him down a flight of concrete stairs, banging his head on each step until he passed out. [Entry #1 at 5–7]. Defendants deny they used excessive force against Plaintiff and argue that he has not introduced any evidence that he was injured. [Entry #69-1 at 12]. In response, Plaintiff argues that the security footage[3] shows SCDMH Defendants dragging him down the steps and kicking and beating him unconscious, and that SCDMH

---

[3] Plaintiff contends that the SCDMH cameras captured the March 24, 2011, incident, and that his counsel introduced this video at his criminal trial. [Entry #85 at 7]. Neither party has submitted the video evidence.

6

has photos that show his body covered in bruises. [Entry #85 at 8]. Plaintiff argues Defendants did not introduce the security footage or the photos of his injuries because it "shows incriminating evidence of physical damage." *Id.* at 10. Plaintiff provides no explanation for why he did not request these materials from Defendants during discovery.

In an excessive force claim brought by an involuntarily civilly-committed individual, the appropriate standard is under the substantive due process clause of the Fourteenth Amendment. "[I]ndividiuals in the non-seizure, non-prisoner environment have a substantive due process right to be free from the use of excessive force by their custodians." *Johnson v. Newburgh Enlarged School Dist.,* 239 F.3d 246, 253 (2d Cir. 2001)). To succeed under the Fourteenth Amendment, a plaintiff must show that the defendants "inflicted unnecessary and wanton pain and suffering." *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008) (quoting *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir.1998), overruled on other grounds by *Wilkins v. Gaddy*, 559 U.S. 34 (2010)); *see also Whitley v. Albers*, 475 U.S. 312, 320 (1986). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency are always violated . . . whether or not significant injury is evident.'"*Wilkins*, 559 U.S. at 37 (quoting *Hudson v.*

7

*McMillan*, 503 U.S. 1, 7 (1992)).

The Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Whitley*, 475 U.S. at 321.

Viewing the facts in the light most favorable to Plaintiff, the undersigned finds that there are factual disputes as to if, and to what extent, SCDMH Defendants kicked, punched, and choked Plaintiff and whether they dragged him down a flight of stairs. There is also a dispute of material fact as to whether Plaintiff sustained any injuries.[4] Additionally, it is unclear whether Plaintiff disputes that he was swinging his fists in an attempt to hit SCDMH Defendants.[5] These disputes of fact are material in that they affect the court's analysis of all of the *Whitley* factors. Therefore, the undersigned recommends Defendants' motion for summary judgment be denied as to Plaintiff's excessive force claim.

---

[4] Neither Plaintiff nor Defendants have offered Plaintiff's medical records as evidence.

[5] While Plaintiff does not directly dispute that he was swinging his fists or that he attempted to hit SCDMH Defendants, he asserts that he was found not guilty by a jury on claims of assault and battery and makes statements such as "It is simply not logical to claim the Defendants had to beat Plaintiff to keep him from cussing or from throwing papers around his locked cell." [Entry #85 at 5].

### 2. Malicious Prosecution

Plaintiff claims that Defendants maliciously prosecuted him for the March 24, 2011, events by having him charged with assault, malicious injury to property, and threatening a public official. [Entry #1 at 5–7]. Defendants argue that the charges against Plaintiff were not brought with malicious intent, but were based on Plaintiff's own conduct. Defendants further assert that SVPTP policy directs prosecution of residents for their illegal actions. [Entry #69-1 at 14].

To support a claim of malicious prosecution, a plaintiff must show: (1) the initiation or maintenance of a proceeding by the defendant against the plaintiff; (2) termination of that proceeding favorable to the plaintiff; and (3) lack of probable cause to support that proceeding. *Burrell v. Virginia*, 395 F.3d 508, 514 (4th Cir. 2005); *see also Robinson v. S.C. Dep't of Public Safety*, No. 2:06-1288-SB, 2007 WL 840338, at *4 (D.S.C. Mar. 15, 2007) (noting that while there is no "independent cause of action for malicious prosecution under § 1983" and that such claims are properly understood as Fourth Amendment claims, "[f]or a plaintiff to state a § 1983 claim for malicious prosecution in relation to a seizure violative of the Fourth Amendment, the defendant(s) must have seized the Plaintiff pursuant to legal process that was not supported by probable cause and the criminal proceedings must have terminated in the Plaintiff's favor") (internal quotation marks and omitted) (citing *Brooks v. City of Winston-Salem,* 85 F.3d 178 (4th Cir. 1996)).

Probable cause will be found to exist when "the facts and circumstances within an officer's knowledge—or of which he possesses reasonably trustworthy information—are

9

sufficient in themselves to convince a person of reasonable caution that an offense has been or is being committed." *Wadkins v. Arnold*, 214 F.3d 535, 539 (4th Cir. 2000) (citing *Brinegar v.United States*, 338 U.S. 160, 175–76 (1949)). While probable cause demands "more than a mere suspicion . . . evidence sufficient to convict is not required." *Taylor v. Waters*, 81 F.3d 429, 434 (4th Cir. 1996) (citing *Wong Sun v. United States*, 371 U.S. 471, 479 (1963)). Reasonable officers need not "resolve every doubt about a suspect's guilt before probable cause is established." *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991) (citation omitted).

It is undisputed that Plaintiff meets the first two elements of a malicious prosecution claim with regard to Koon.[6] Viewing the facts in the light most favorable to Plaintiff, it appears that Koon had probable cause to support proceedings against Plaintiff. Plaintiff admits that he: (1) threw a table against the door of his cell, (2) refused to allow SCDMH Defendants to lock his cell flap, (3) snatched Green's ID card from his person, threw it, and tried to do the same to Williams' card. [Entry #93-2 at 8–10]. Further, Plaintiff has not denied that he physically threatened Dendy by pointing his finger in her face or that he verbally threated to harm her. Finally, even if the information on which Koon based his probable cause analysis was incorrect, Plaintiff has provided no reason to believe that the facts and circumstances within Koon's knowledge through his investigation, were insufficient to convince a person of reasonable caution that Plaintiff had committed the offenses. [Entry #69-4]. Therefore, the undersigned recommends that

---

[6] Although Plaintiff does not limit his cause of action to Koon, it appears that Koon is the only defendant that made the decision to institute an action against Plaintiff.

Defendants be granted summary judgment on Plaintiff's claim for malicious prosecution.

        3.      Due Process

Plaintiff generally claims that Defendants violated his due process rights, but does not specify what factual allegations support this cause of action. To the extent Plaintiff alleges his conditions of confinement violated his due process rights, the undersigned analyzes his claims as follows. Plaintiff complains that SCDMH Defendants placed him in four point belly chains, moved him to a lock down cell, stripped him nude, forced him to sleep on a concrete slab for two days, and refused to give him his mail or allow him to contact his attorney. [Entry #1 at 7]. In his complaint, Plaintiff contends he was in lock down for 29 days and then placed in isolation for an additional 47 days. *Id.* However, in his response to summary judgment, he admits the following: (1) he used the gown and blanket he was provided to aid him in flooding his cell with the toilet; (2) he was allowed out of the locked-down cell with handcuffs behind his back; (3) he had access to mail beginning on April 4, 2011; and, (4) he began receiving recreation on April 11, 2011. [Entry #93-2 at 12]. Therefore, though Plaintiff may have claimed he was isolated, he was provided access to mail and recreation within a few weeks of the incident.

In deciding whether a civilly-institutionalized individual's constitutional rights have been violated, the courts must determine whether the restrictions on liberty are reasonably related to legitimate government objectives and not tantamount to punishment. *Youngberg v. Romeo*, 457 U.S. 307, 321 (1982). "[T]he decision, if made by a professional, is presumptively valid; liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment,

11

practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id*. at 323. Deference to professionals ensures that federal courts do not unnecessarily interfere with the internal operations of state institutions. *Id*. at 322; *Bell v. Wolfish*, 441 U.S. 520 at 544 (holding that courts should not "second-guess the expert administrators on matters which they are better informed.") The Court specifically stated that the state also has an "unquestionable duty to provide reasonable safety for all residents and personnel within the institution." *Youngberg* at 324.

Here, although it is unclear who was responsible for the decisions and conditions related to Plaintiff's detention after the March 24, 2011, incident, such actions were reasonably related to legitimate government interests. Defendants contend that they followed all appropriate standards and procedures enumerated in SVPTP policy in response to Plaintiff's behavior on March 24, 2011. [Entry #69-1 at 6, #69-3]. Here, the SCDMH balanced Plaintiff's liberty interests with the interests in protecting Plaintiff, SCDMH personnel, and the property of SCDMH. Although Plaintiff was held in a lock down for a short period, he was initially provided a gown and blanket. After he destroyed the gown and blanket he was provided, he was given replacements within 48 hours. [Entry #93-2 at 12]. It appears that SCDMH began providing Plaintiff recreation as soon as was practicable, as his behavior normalized and he was compliant with security expectations. Because the restrictions on Plaintiff's liberty interests were reasonably related to legitimate government interests, the undersigned recommends Defendants be granted summary judgment on Plaintiff's due process claim.

12

4.     Equal Protection

Plaintiff makes a general claim that Defendants denied him equal protection based on religion and race. [Entry #1 at 9]. To succeed on an equal protection claim under the Fourteenth Amendment, Plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). "If [he] makes this showing, 'the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.'" *Veney v. Wyche*, 293 F.3d 726, 731 (4th Cir. 2002) (quoting *Morrison*, 239 F.3d at 654).

Defendants argue they confiscated Plaintiff's magazine because it contained a weapons order form, which is a violation of SVPTP contraband policy. [Entry #92 at 3]. The governing SVPTP policy specifically states that "it is necessary to limit access to, and to prohibit some materials which are not supportive of treatment for the population served by SVPTP." [Entry #69-3 at 28]. "Weapons of any kind, including but not limited to firearms, knives or the materials for making knife-like weapons, clubs, chemical mace or pepper-spray or any articles that can be used for offense or defense." *Id*. In response, Plaintiff argues his magazine did not contain a weapons order form and that non-Pagan residents are approved to receive many publications that picture weapons and contain weapons order forms. [Entry #85 at 5].

Although Plaintiff generally argues that he has been treated differently than others similarly-situated, he does not provide any evidence to support this claim. Defendants

13

acted pursuant to their policy, and there is no evidence in the record that they treated differently others who were similarly-situated. Based on the record before the court, the undersigned recommends Defendants be granted summary judgment on Plaintiff's equal protection claim.

          5.      Eleventh Amendment Immunity

Defendants argue that Plaintiff has not presented any evidence that they were acting within their individual capacity, and that they are entitled to Eleventh Amendment immunity for Plaintiff's claims against them in their official capacity. [Entry #69-1 at 17–18]. The Eleventh Amendment bars suits by citizens against non-consenting states brought either in state or federal court. *See Alden v. Maine*, 527 U.S. 706, 712–13 (1999); *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Hans v. Louisiana*, 134 U.S. 1 (1890). Such immunity extends to arms of the state, including a state's agencies, instrumentalities, and employees. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984); *see also Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). While sovereign immunity does not bar suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither of those exceptions applies in the instant case. Congress has not abrogated the states' sovereign immunity under § 1983, *see Quern v. Jordan*, 440 U. S. 332, 343 (1979), and South Carolina has not consented to suit in federal district court. S.C. Code Ann. § 15-78-20(e). To the extent Plaintiff has sued Defendants in their official capacity, the undersigned

14

recommends that these claims be dismissed. However, to the extent Plaintiff sued Defendants in their personal capacities, such claims remain.

### 6. Qualified Immunity

Defendants assert that they are entitled to qualified immunity on Plaintiff's claims. [Entry #69-1 at 18–21]. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether a defendant is protected by this immunity. The *Harlow* court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad

15

guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

The undersigned recommends that qualified immunity be denied on Plaintiff's excessive force claim, because of the factual disputes outlined *supra*. *See Peoples v. Lloyd,* C/A No. 1:08-3958-CMC, 2010 WL 3951436 (D.S.C. Oct. 7, 2010) (denying defendant's defense of qualified immunity because issues of fact existed as to defendant's use of excessive force). As to Plaintiff's remaining claims, the record before the court shows that Defendants did not transgress any statutory or constitutional rights of Plaintiff of which they were aware in the discretionary exercise of their respective professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, the undersigned recommends that Defendants be granted qualified immunity on Plaintiff's remaining claims.

       7.     Other Claims

Although Plaintiff's complaint vaguely uses the word "conspiracy" in one instance and generally alleges SCDMH owed him a duty, it does not appear that he intended to bring claims for respondeat superior or civil conspiracy. To the extent Plaintiff asserts claims for respondeat superior and civil conspiracy, he has failed to offer sufficient argument or evidence to support such claims, and the undersigned recommends Defendants be granted summary judgment on these claims.

III.    Conclusion and Recommendation

Based on the foregoing, the undersigned recommends that Defendants' motion for summary judgment [Entry #69] be denied as to Plaintiff's claim of excessive force

against SCDMH Defendants in their personal capacity and granted as to all of Plaintiff's remaining claims.

  IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 28, 2014               Shiva V. Hodges
Columbia, South Carolina         United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).