IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Shawn Michael Robinson, ) | C/A NO. 3:13-0073-CMC-SVH |
| ) | |
| Plaintiff, ) | |
| ) | **OPINION and ORDER** |
| v. ) | |
| ) | |
| Dwight Green; Robert Vick; Leonard ) | |
| Ramsey; Cpl. Jarvis Borum; Invest. James ) | |
| M. Koons; SCDMH Security Officers Eric ) | |
| Rotenberry; Benjamin Williams, ) | |
| ) | |
| Defendants.[1] ) | |
| _____ ) | |

This matter is before the court on Plaintiff's *pro se* complaint filed in this court. In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 (B)(2)(e), DSC, this matter was referred to United States Magistrate Judge Shiva V. Hodges for pre-trial proceedings and a Report and Recommendation ("Report"). On July 28, 2014, the Magistrate Judge issued a Report recommending that Defendants' motion for summary judgment be granted in part and denied in part. The Magistrate Judge advised the parties of the procedures and requirements for filing objections to the Report and the serious consequences if they failed to do so. Both Plaintiff and Defendants have filed objections to the Report, as well as responses to objections.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the court.

---

[1] Defendants South Carolina Department of Mental Health and Rosalind Dendy were previously dismissed from this action. *See* Opinion and Order, ECF No. 89. Additionally, Defendant James Koons is more correctly identified as James Koon. No amendment to the complaint has been sought or made in this regard.

1

*See Mathews v. Weber*, 423 U.S. 261 (1976). The court is charged with making a *de novo* determination of any portion of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). The court reviews the Report only for clear error in the absence of an objection. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (stating that "in the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.") (citation omitted).

After reviewing the record of this matter, the applicable law, the Report and Recommendation of the Magistrate Judge, and all objections and responses, the court adopts the Report by reference in this Order.[2]

### I. VERIFIED COMPLAINT

As correctly indicated by the Magistrate Judge, in this Circuit, verified complaints by *pro se* individuals are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). Plaintiff filed a Verified Complaint. *See* Compl., ECF No. 1.[3] Therefore, Defendants' objections citing *Stone v. University of Maryland*

---

[2]It appears the Report contains a scrivener's error regarding the number of warrants sworn out for Plaintiff's arrest. *See* Report at 5, ECF No. 105. Plaintiff was charged with four (4) counts of assault and battery.

[3]Plaintiff also filed a variety of material in opposition to Defendants' summary judgment motion and in support of his complaint. However, these filings are unaccompanied by affidavit or other sworn statement.

2

*Medical Systems Corp.*, 855 F.2d 167 (4th Cir. 1988), are rejected.

## II. EXCESSIVE FORCE

As noted by the Magistrate Judge, Plaintiff is involuntarily committed to the Sexually Violent Predator Treatment Program ("SVPTP") at the South Carolina Department of Mental Health ("SCDMH") pursuant to S.C. Code Ann. § 44-48-10 through § 44-48-170. Accordingly, his claims of alleged excessive force are evaluated under the substantive due process clause of the Fourteenth Amendment. "Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner." *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (citing *Andrews v. Neer*, 253 F.3d 1052, 1061 (8th Cir. 2001) (holding that an excessive-force claim by an involuntarily committed state hospital patient should be evaluated under same standard as an excessive-force claim brought by a pretrial detainee)).

Defendants object to the recommendation of denial of summary judgment as to Plaintiff's claims of excessive force against Defendants in their individual capacities because "Plaintiff has failed to plead specific wrongdoing against each and every Defendant with regards to his excessive use of force claims." Obj. at 7, ECF No. 111. Defendants cite *Monell v. Department of Social Services*, 436 U.S. 658 (1978), for the unremarkable proposition that "a defendant cannot be held liable for the acts of others without specific wrongdoing by that defendant." Obj. at 8.

It is well-settled that in order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). Additionally, to state a § 1983 claim, a plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant,

and an affirmative link between the injury and that conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, (1976).

According to Plaintiff's Verified Complaint, Defendants Dendy, Borum, Rotenberry, Williams, Green, Vick, and Ramsey came to his cell after Plaintiff became upset with Dendy regarding the withholding of a magazine and called her a "liar". Compl. at ¶¶ 4, 5, ECF No. 1. Plaintiff alleges Dendy "slammed the cell door shut." *Id*. at ¶ 5. Plaintiff then alleges that his cell door was opened and that "Defendant PSO Dendy and *all named party Defendant[s] being*, [sic] PSO Borum, SCDMH (S/O) Eric Rotenberry, S/O Benjamin Williams, SCDHM Mental Health Specialist (MHS) Dwight Green, Mr. Vic [sic], [and] Mr. Ramsey" "did enter cell 216 and slam Plaintiff to the floor, and all Defendants did choke, kick, punch Plaintiff." *Id*. at ¶¶ 5 (emphasis added), 5(d). Plaintiff alleges that after this "beating," "Defendants then did leave slamming the 216 cell door." *Id*. at 5(f). After Plaintiff "snatched" Green's identification badge via the cell's "flap window section," the cell door was ordered opened and "all seven named party Defendants [listed in paragraph 5] then did again enter and beat Plaintiff for a lon[g] period of time." *Id*. at ¶ 6(a). "When that beating stopped, the Defendant[s] left the cell 216, and then returned and slammed Plaintiff to the floor beating and punching [sic] and placed Plaintiff in four (4) point belly and leg and hand-cuff restrain[t]s." *Id*. at ¶ 6(c). Plaintiff alleges that Defendants "then did place Plaintiff into a white sheet, and then did drag Plaintiff to a stair way and pulled Plaintiff on his back down the stairs causing Plaintiff to be pass out [sic] from his head striking each of (19) [sic] concrete steps." *Id*. at ¶ 7. Dendy was previously dismissed from this action; therefore, the issue is whether the allegations of the Verified Complaint are sufficient to hold the remaining six (6) Defendants who

were present during the incident for trial.[4]

In support of their summary judgment motion, Defendants provide affidavits of Jarvis Borum, Robert Vick, Benjamin Williams, Eric Rottenberry,[5] and Leonard Ramsey. *See* ECF Nos. 69-5, 69-6, 69-7, 69-8, and 69-9. Three of these affiants admit to being present and interacting with Plaintiff. *See*, *e.g.*, Aff. of Sgt. Jarvis Borum at ¶ 4, ECF No. 69-5 ("Mr. Robinson was actively resisting being handcuffed, and would not comply with verbal command. I placed metal handcuffs on Mr. Robinson before placing him into his cell."); Aff. of Sgt. Benjamin Williams at ¶ 4, ECF No. 69-7 ("I encountered Resident Shawn Michael Robinson in the hallway, who was irate and yelling . . . . We physically restrained him and placed him in handcuffs, secured him back in his cell, and exited the cell."); Aff. of Eric Rottenberry at ¶ 4, ECF No. 69-8 ("We secured Mr. Robinson in his cell, at which point he became more enraged."). Two affiants, Defendants Vick and Ramsey, describe contact with Plaintiff but their affidavits do not specify their location during the altercations. Defendants did not provide an affidavit from Defendant Green.

Defendants maintain that they did not employ excessive force in their interactions with Plaintiff on the day in question and that they complied with "all applicable professional and legal standards" during the incident. Aff. of Sgt. Jarvis Borum at ¶ 11, ECF No. 69-5. For example, Defendant Jarvis Borum attests that

> I received an assistance call via radio from PSO Rottenberry in reference to Resident Shawn Michael Robinson. [ ] I was not present on the unit at that time, bu I responded to the call. Mr. Robinson was actively resisting being handcuffed and would not comply with verbal commands. I placed metal handcuffs on Mr. Robinson before placing him into his cell. . . . . I along with Mental Health

---

[4]Defendant Koon conducted an investigation after the incident.

[5]This Defendant's last name appears in the record as both "Rotenberry" and "Rottenberry."

5

> Specialist Dwight Green, Security Officer Benjamin William, Lt. Rosalind Dendy, and Security Officer Eric Rottenberry, entered Mr. Robinson's cell in order to remove [the handcuffs, which had come off Plaintiff's left hand], and again he refused to follow verbal commands and actively resisted. We subdued Mr. Robinson, removed the handcuffs, and placed Mr. Robinson into leg restraints. . . . Mr. Robinson then wedged himself between the floor and the metal, immovable bed in his cell. We attempted to talk Mr. Robinson out from the bed but he actively resisted. We were able to remove Mr. Robinson from under the bed while minimizing any injury to him. Because he refused to walk, we physically carried Mr. Robinson down the flight of stairs and into Cell 101.

*Id.* at ¶ 4, ECF No. 69-5.

In support of their objections, Defendants submit medical records and a video recording of security footage from the day in question.[6] The medical records indicate that when seen by medical personnel on March 25, 2011, Plaintiff presented with "[m]ultiple bruises noted about both upper extremities, as well as some to the ankles, face, forehead, and back." Attach. to Aff. of Holly Scaturo, ECF No. 111-1 at 6. While this bruising may be entirely consistent with contusions incurred during a struggle between a non-compliant resident of a treatment program while officers attempted to maintain or restore order, it may also be the after-effects of the gratuitous beatings Plaintiff alleges in his Verified Complaint.[7]

As noted, the parties dispute what occurred during the incident(s), and these disputes are material. At this stage of the proceedings, facts are to be taken in the light most favorable to

---

[6]The video recording (DVD) reflects that at most five individuals were involved in one physical altercation with Plaintiff. This DVD contains the footage from two different cameras, although apparently only one camera recorded any portion of an altercation.

[7]The medical records submitted also reveal that a CT scan was performed on March 25, 2011. The CT scan revealed that "[t]here are not extraaxial fluid collections nor evidence of hemorrhage. The visualized orbits, temporal bones, and paranasal sinuses are grossly normal. There is mild maxillary sinus disease bilaterally." ECF No. 111-1 at 9. In other words, the CT scan showed that while there was no evidence of internal bleeding or abnormal collections of brain fluid, Plaintiff may have been suffering from a sinus infection.

Plaintiff and inferences must be drawn in Plaintiff's favor. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (observing in excessive force case that inmate was to "have the credibility of his evidence as forecast assumed, his version of all that is in dispute accepted, [and] all internal conflicts in it resolved favorably to him" (citation omitted)), *cert. denied*, 491 U.S. 1109 (1991). Accordingly, as Plaintiff's Verified Complaint has specifically identified seven individuals – Green, Vick, Ramsey, Dendy, Borum, Rotenberry, and Williams – whom he claims entered his cell and "beat Plaintiff for a lon[g] period of time[,]" Compl. at ¶ 6(b), summary judgment must be denied.

### III. QUALIFIED IMMUNITY

Defendants have also moved for qualified immunity. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id*. at 236.

In this case, the Fourteenth Amendment right to be free from excessive force by individuals operating under color of state law was well established at the time of this incident. "[W]hile the purely legal question of whether the constitutional right at issue was clearly established 'is always capable of decision at the summary judgment stage,' a genuine question of material fact regarding '[w]hether the conduct allegedly violative of the right actually occurred . . . must be reserved for trial.'" *Willingham v. Crooke*, 412 F.3d 553, 559 (4th Cir. 2005) (quoting *Pritchett v. Alford*, 973 F.2d 307, 313 (4th Cir. 1992)). As noted above, a genuine issue of material fact exists whether Defendants Green, Vick, Ramsey, Borum, Rotenberry, and Williams applied physical force and, if

7

so, whether it was done "maliciously and sadistically to cause harm," or in a good faith effort to maintain or restore discipline. Therefore, these Defendants are not entitled to summary judgment on grounds of qualified immunity.

As noted by the Fourth Circuit in a recent unpublished decision

> It may very well be the case that [Plaintiff] is violent, volatile, and [was] engaged in flagrantly provocative behavior. It may likewise be the case that, when the record is further developed, [Plaintiff] will find it difficult, and perhaps impossible, to prevail on his claims – to prove that he was confined and assaulted in the manner he alleges, that the force applied by Appellees was unjustified, and that they full well knew this. But where, as here, a [confinee] has duly filed the necessary briefs, . . . [and] corroborative evidence to support his claims, such disputes of credibility are reserved for a fact finder, here, as requested by [Plaintiff], a jury.

*Mann v. Failey*, __ F. App'x __, 2014 WL 3511878 at *7 (4th Cir., July 17, 2014).

Accordingly, for these reasons, the court overrules Defendants' objections and **denies** Defendants' motion for summary judgment as to Plaintiff's allegations of excessive force.

### IV. EQUAL PROTECTION – CONSPIRACY; RELIGIOUS AND RACIAL DISCRIMINATION

The Report recommends that Defendants be granted summary judgment as to Plaintiff's "general claim that Defendants denied him equal protection based upon religion and race." Report at 13. Plaintiff argues in his objections that the Report "does not mention religious discrimination as complained . . . ." Obj. at 3, ECF No. 109. *See id*. at 2 (Plaintiff was "beat[en] . . . in retaliation for Plaintiff being of the Pagan religion."). Additionally, Plaintiff maintains in a letter submitted after the court received his objections that the Report failed to make "a ruling" on his claims for religious and racial discrimination. Letter at 2, ECF No. 116.

Plaintiff contends that Defendants' alleged motivation for "beating" him was his religious affiliation.[8] Plaintiff is free to present evidence and argument to a jury regarding whether an officer

---

[8]Plaintiff appears to allege that he is a follower of Paganism. *See* Compl. at ¶ 4 (defendant was handing "Plaintiff his mail being a Pagan Religious magazine . . . .").

8

applied force "maliciously and sadistically for the very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). This would include evidence to support Plaintiff's claim that the excessive force was motivated by malicious religious discrimination.

The complaint contends Plaintiff was separately discriminated against because of his race in the denial of access to a Pagan publication. However, for the reasons noted in the Report, Plaintiff has failed to establish this claim, and it is dismissed with prejudice.

Finally, Plaintiff makes a claim of a "conspiracy" to violate his equal protection rights. However, for the reasons stated by the Magistrate Judge, this claim is rejected and Defendants are entitled to summary judgment.

### V. MALICIOUS PROSECUTION

The Report recommends granting summary judgment to Defendants on Plaintiff's claim of malicious prosecution. Report at 9-11. Plaintiff argues in his objections that summary judgment should be denied because Investigator Koon "reviewed the SCDHM security recording of the depicted events . . . prior to initiating criminal prosecution[,]" and that a jury "later found there was not probable cause in the first place . . . ." Obj. at 1.

Plaintiff's objections are rejected. Not only did Koon review video footage of the event, he interviewed several individuals who were involved. If the video that Koon reviewed is the same as was received and reviewed by this court, it is likely of little value. Moreover, the fact that a jury found that the Solicitor had failed to prove a criminal case beyond a reasonable doubt[9] has no

---

[9] Plaintiff maintains that he was acquitted of all charges in March 2012. Indeed, Investigator Koon's affidavit, submitted in support of Defendants' summary judgment motion, indicates that "the jury found Mr. Robinson Not Guilty on all six charges." Aff. of James M. Koon, Jr. at ¶ 4, ECF No.

9

bearing on whether probable cause existed for issuance of a warrant. As correctly noted in the Report, "[r]easonable officers need not 'resolve every doubt about a suspect's guilt before probable cause is established.'" Report at 10 (quoting *Torchinsky v. Siwinsky*, 942 F.2d 257, 264 (4th Cir. 1991) (citation omitted)).

Defendants' motion for summary judgment as to Plaintiff's claim for malicious prosecution is **granted** and it is dismissed with prejudice.

### VI. CONCLUSION

For the reasons stated in the Report and the additional reasons noted above, Defendants' summary judgment motion is **granted in part and denied in part**. The motion is denied as to Plaintiff's claim of excessive force against Defendants Green, Vick, Ramsey, Borum, Rotenberry, and Williams. The motion is granted on Plaintiff's official capacity claims and claims of racial discrimination, religious discrimination, and conspiracy. Defendant James Koons is dismissed from this matter with prejudice.

This matter shall proceed to trial on Plaintiff's claim of excessive force as to Defendants Dwight Green, Robert Vick, Leonard Ramsey, Jarvis Borum, Eric Rotenberry, and Benjamin Williams. A pretrial conference shall be scheduled at a later date where the court will discuss any outstanding matters including jury selection on November 13, 2014, and a trial date.

---

69-4. On-line records of the General Sessions Court indicate that Plaintiff was acquitted on the charge of Threatening the Life, Person or Family of a Public Official or Public Employee (S.C. Code § 16-3-1040). However, according to these on-line records, the remaining charges (four counts of Assault and Battery, 3rd Degree and one count of Malicious Injury to Property) were dismissed by the Solicitor. *See* http://http://www5.rcgov.us (last visited Aug. 25, 2014). This court may take judicial notice of other judicial proceedings. *See United States v. Parker*, 956 F.2d 169, 171 (8th Cir. 1992) (district court may take judicial notice of a prior related proceeding); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the content of court records.'").

**IT IS SO ORDERED.**

                                            s/ Cameron McGowan Currie
                                            CAMERON McGOWAN CURRIE
                                            SENIOR UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 8, 2014